## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CRISTOBAL SANCHEZ, on behalf of himself and )
all other similarly situated persons, known and )
unknown, )
       )
              Plaintiff, )
       )
           v. )      No. 13 C 5615
       )
EL PUEBLITO, INC. and MARIA PATRICIA )      Judge Der-Yeghiayan
ESPINOZA, individually )
       )      Magistrate Judge Gilbert
           Defendants. )


## INDEX OF EXHIBITS TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
## AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

Letter dated January 28, 2014 from Plaintiff's counsel to Defendants' counsel ...............A

Email dated February 25, 2014 from Defendants' counsel to Plaintiffs' counsel ..............B

Copies of Cited Electronic Cases.....................................................................................C

# EXHIBIT A



**Werman
Salas** P.C.

77 West Washington Street, Suite 1402, Chicago, IL 60602 Tel: 312-419-1008 | Fax: 312-419-1025 **www.flsalaw.com**

January 28, 2014

***Via Electronic Mail Only***
Law Offices of Jesus Ricardo Rivera
2057 North Western Avenue
Chicago, IL 60647

      Re:   *Madero, et al. v. Peter's Engineering, et al.*

Dear Mr. Rivera:

      Plaintiff has no objection to your request for an additional 14 days to respond to Plaintiff's document requests. Please confirm that we will receive Defendants' answers to Plaintiff's First Set of Interrogatories by January 31, 2014.

      There are multiple issues with the discovery requests Defendants have propounded on the Plaintiff. Request No. 1 of Defendant's Corrected Request for Production seeks copies of Plaintiff's cell phone records. Request Nos. 2, 3, 4, 5 and 6 seek documents related to Plaintiff's federal and state tax returns, including Forms W-2 and 1099, as well as personal financial statements, certificates of deposit, and savings account passbooks. Additionally, Request No. 10 seeks copies of Plaintiff's driver's license, social security card and passport, while Request No. 16 seeks copies of all criminal convictions involving Plaintiff. Similarly, Interrogatory No. 1 seeks Plaintiff's address, date of birth, social security and tax identification numbers, while Interrogatory No. 4 seeks information regarding the balances of Plaintiff's financial accounts and investments.

      These discovery requests are improper and appear to be intended to probe into Plaintiff's immigration status or to otherwise harass Plaintiff regarding information that is completely irrelevant to Plaintiff's claims or Defendants' defenses. *See Benitez,* Case No. 08 C 1998, Order Dated March 3, 2009 (N.D. Ill. 2009); *Acevedo v. Ace Coffee Bar,* Case No. 07 C 4091, Order Dated April 10, 2008 (N.D. Ill. 2008); *Montoya v. S.C.C.P. Painting Contractors, Inc.,* 530 F. Supp. 2d 746 (D. Md. January 14, 2008)(barring discovery on immigration status and tax information); *Galaviz-Zamora v. Brady Farms, Inc.,* 230 F.R.D. 499 (W.D. Mich. 2005)(barring discovery on immigration status, tax information, identification documents, residency information, including the dates and time Plaintiffs entered the United States). Plaintiff will not respond to these discovery requests.

      We ask that you immediately withdraw the document requests nos.1, 2, 3, 4, 5, 6, 10 and 16 and interrogatory nos. 1 and 4. If you do not confirm that the requests are withdrawn on or

Jesus Ricardo Rivera
January 28, 2014
Page 2

before **February 11, 2014,** we will seek a protective order from the Court and will seek from you our attorneys' fees and costs.

Very truly yours,

Sarah J. Arendt

# EXHIBIT B

| Subject: | Re: Sanchez v. El Pueblito |
| --- | --- |
| From: | J R Rivera (riveraesq@gmail.com) |
| To: | sarendt@flsalaw.com; |
| Date: | Tuesday, February 25, 2014 5:14 PM |

Correct

On Tue, Feb 25, 2014 at 4:28 PM, Sarah Arendt <sarendt@flsalaw.com> wrote:
To be clear, are Defendants refusing to withdraw document requests 1, 4, 6, 10 and 16 and
interrogatory 4?

Sarah J. Arendt | Werman Salas P.C.  ** Please note our new firm name **
77 W. Washington | Suite 1402 | Chicago, Il.60602
312-419-1008 | 312-419-1025 (fax)
email: sarendt@flsalaw.com
website: www.flsalaw.com
twitter: @WermanSalas

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which
it is addressed and may contain information that is privileged, confidential
and exempt from disclosure under applicable law. If the reader of this e-mail
message is not the intended recipient, or the employee or agent responsible for
delivery of the message to the intended recipient, you are hereby notified that
any dissemination,distribution or copying of this communication is prohibited.
If you have received this e-mail in error, please notify us immediately by
telephone at (312) 419-1008 and also indicate the sender's name. Thank you.

---

**From:** J R Rivera <riveraesq@gmail.com>
**To:** Sarah Arendt <sarendt@flsalaw.com>
**Sent:** Tuesday, February 25, 2014 4:18 PM

**Subject:** Re: Sanchez v. El Pueblito

Sorry...meant we withdraw production #2,3 and 5.  thanks

On Tue, Feb 25, 2014 at 4:15 PM, J R Rivera <riveraesq@gmail.com> wrote:
Thank you for your patience.

We agree to withdraw #1 interrogatories only as to the social security number.

We agree to withdraw #2-6 production.

On Wed, Feb 12, 2014 at 10:42 AM, Sarah Arendt <sarendt@flsalaw.com> wrote:
Mr. Rivera:

This is a follow-up to our letter of January 28, 2014. You have not indicated whether Defendants will withdraw document requests nos. 1, 2, 3, 4, 5, 6, 10 and 16 and interrogatory nos. 1 and 4. Please confirm by Friday, Feb. 14 that you have withdrawn those discovery requests. If we do not hear from you by Friday, Plaintiff will file a motion for a protective order and we will seek our attorneys' fees and costs from you.

We also look forward to receiving Defendants' responses to Plaintiff's discovery requests on Friday.

Regards,

Sarah J. Arendt | Werman Salas P.C. ** Please note our new firm name **
77 W. Washington | Suite 1402 | Chicago, Il.60602
312-419-1008 | 312-419-1025 (fax)
email: sarendt@flsalaw.com
website: www.flsalaw.com
twitter: @WermanSalas

CONFIDENTIALITY NOTE: This e-mail is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination,distribution or copying of this communication is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (312) 419-1008 and also indicate the sender's name. Thank you.

--
JESUS RICARDO RIVERA
ATTORNEY AT LAW
2057 NORTH WESTERN AVENUE
CHICAGO, ILLINOIS 60647
T.773.368.1915 F.312.276.9219

"Worry about being better prepared; SUCCESS will take care of itself."

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FOR DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY

DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE.

--
JESUS RICARDO RIVERA
ATTORNEY AT LAW
2057 NORTH WESTERN AVENUE
CHICAGO, ILLINOIS 60647
T.773.368.1915 F.312.276.9219

"Worry about being better prepared; SUCCESS will take care of itself."

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FOR DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE.

--
JESUS RICARDO RIVERA
ATTORNEY AT LAW
2057 NORTH WESTERN AVENUE
CHICAGO, ILLINOIS 60647
T.773.368.1915 F.312.276.9219

"Worry about being better prepared; SUCCESS will take care of itself."

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FOR DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION

OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED ABOVE.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA GUADALUPE ACEVEDO and MARIA CECILIA ACEVEDO, on behalf of themselves and on behalf of all other persons similarly situated known and unknown, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No.  07 C 4091 |
| ACE COFFEE BAR, INC., and RODNEY D. CAVITT, individually, | ) ) ) ) | Judge Coar

Magistrate Judge Denlow |
| Defendants. | ) ) | |

**ORDER**

The Court has considered the Plaintiffs' Motion to Quash the subpoenas Defendants served on

Illinois Secretary of State Driver Services, Illinois State Police Bureau of Identification, Kane

County Sheriff's Department, Cook County Sheriff's Police Department, the DuPage County

Sheriff's Department, Taco Bell, Inc. and Grayhill, Inc. and Plaintiffs' Motion for Protective

Order, together with the submissions and arguments presented by all parties.  The Court is of the

opinion that the Motions should be GRANTED.

It is therefore ORDERED,

Pursuant to Fed. R. Civ. P. 26(c) Plaintiffs shall be protected from disclosure of the following

information:

1)  That pursuant to Fed. R. Civ. P. 45, the subpoenas served on Illinois Secretary of State
     Driver Services, Illinois State Police Bureau of Identification, Kane County Sheriff's
     Department, Cook County Sheriff's Police Department, the DuPage County Sheriff's
     Department, Taco Bell, Inc. and Grayhill, Inc., are quashed; and

      a)  All identification documents and information regarding work authorization status,

          alien status, social security cards, passports, voter registration cards, visas,

          national origin, and alien identification;

          i)  Plaintiffs have and will provide Defendants with each name and social

             security number that appears on any work record of any plaintiff for work

performed for Defendants, in order that any such work record can be

located.

2) Federal, state, and local tax returns under all their identities;

3) Federal, state, and local W-2, W-4, or 1099 forms and bank statements under all of their identities;

4) Any documents or information likely to lead to the discovery of Plaintiffs' immigration status;

5) Information regarding the Plaintiffs' work history outside the time period they claim to have worked for Defendants;

    a)    Plaintiffs will identify every employer for whom they were employed during the

           time period they claim to have worked for Defendants. Defendants will be

           prohibited from seeking any information from or providing any information to

           any such employer (or any other person or entity) that could lead to the discovery

           of the immigration status of any Plaintiff or disclosure of any Plaintiffs'

           involvement in this litigation. Defendants may however, contact the other

           employers' identified by the Plaintiffs (as provided above) in order to verify the

           alleged dates of employment.

6.    Plaintiffs shall not answer Requests to Admit Nos. 8 and 9 to Maria C. Acevedo and

Requests to Admit Nos. 9, 10, 11, 12,13, 14, and 15 to Maria G. Acevedo.

7.    Plaintiffs' request for an award of their reasonable attorneys' fees and costs for

preparing, filing and presenting their motion to quash and for a protective order is denied

without prejudice.

Entered this 9th day of April, 2008.

*Morton Denlow*
_____

Morton Denlow,
United States Magistrate Judge

2002 WL 1163623
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Juan FLORES, et al., Plaintiffs,
v.
ALBERTSONS, INC., et al., Defendants.

No. CV0100515AHM(SHX). | April 9, 2002.

Opinion

## ORDER DENYING DEFENDANT ALBERTSON'S, INC.'S MOTION FOR REVIEW AND RECONSIDERATION

MATZ, J.

### INTRODUCTION

**\*1** This matter is before the Court on Defendant Albertson's, Inc.'s (alternatively, "Defendant" or "Albertson's") Motion for Review and Reconsideration. Defendant seeks review of Magistrate Judge Stephen J. Hillman's ("Magistrate Judge") February 26, 2002 order granting in part and denying in part Defendant's "Motion to Compel Production of Documents from Plaintiffs Guadalupe Flores and Armando Jimenez." Because the Court finds Defendant has not met the burden for a Motion for Review and Reconsideration, the Court DENIES Defendant's motion.

### BACKGROUND

This case is a class action brought by eight janitors against Albertson's, Ralphs, Vons and Safeway ("Supermarket Defendants"), and the entities with whom they contract for janitorial services, Encompass Services Corporation ("Encompass") and Building One Service Solutions, Inc. ("BOSS"). The class of Plaintiffs is defined as follows:

> All individuals who, at any point in time since January 1, 1994, have performed janitorial services in California for Albertson's, Inc., Ralphs Grocery Company, The Vons Companies, Inc., and any other California supermarket whose

owners and operators have contracted with defendants Encompass Services Corporation, and/or Building One Service Solutions, Inc., ... for the provision of said services.

Plaintiffs allege that beginning in approximately 1994 the Supermarket Defendants entered into agreements with Defendants Encompass and its subsidiary or predecessor in interest, BOSS, whereby those entities were to provide janitorial services for stores operated by the Supermarket Defendants. (First Amended Complaint ("FAC") ¶ 2). Thereafter, Encompass allegedly conspired with recruiters who engaged the plaintiffs to work for the Supermarket Defendants. (*Id.*). In connection with this work, Plaintiffs allege they were unlawfully treated as mere independent contractors and that such classification resulted in Defendants failing to pay Plaintiffs overtime premiums and other wages to which they were entitled. (*Id.*). To remedy this failure, Plaintiffs assert the following claims:

(1) Failure to Pay Overtime Compensation and Other Wages in Violation of the Fair Labor Standards Act (FLSA)

(2) Failure to Pay Overtime Compensation and Other Wages in Violation of the California Labor Code

(3) Breach of Written Contract Against Encompass

(4) Negligence Per Se

(5) Negligent Training and/or Supervision Against Albertson's, Ralphs and Vons

(6) Negligent Hiring and Retention

(7) Fraud

(8) Unfair Business Practices

(9) Unlawful and Unfair Business Practices Against the Supermarket Defendants

Other than the exceptions noted, each claim is pled against all defendants.

In connection with its defense of this action, Defendant propounded the following document requests to the plaintiffs. (Jt. Stip, Ex. B at 95–97).

*DOCUMENT REQUEST NO. 17:*

Each and every DOCUMENT describing, reflecting, referring to or relation to the amount of [Plaintiff] FLORES'S income, whether earned or passive, from January 1, 1994, to the present, including but not limited to bank account statements, brokerage account statements, bank deposit receipts, and W–2 or 1099 forms.

**\*2** *DOCUMENT REQUEST NO. 18:*

FLORES'S personal income tax returns which were filed with the State of California or the International [sic] Revenue Service for the tax years 1996 and 1997 and 1998 and 1999 and 2000.

*DOCUMENT REQUEST NO. 20:*

Each and every DOCUMENT describing, reflecting, referring to or relating to the immigration status of FLORES, including but not limited to I–9 forms.

Plaintiffs objected to each of the above requests on various grounds. Thereafter, Defendant filed a Motion to Compel. The Magistrate Judge conducted a court hearing on Defendant's motion on January 23, 2002 and a second telephonic hearing on February 4, 2002. On February 26, 2002, the Magistrate Judge issued an order granting in part and denying in part Defendant's motion. With respect to Document Requests 17 and 18, the Magistrate Judge ordered the named plaintiffs to produce all responsive W–2 and 1099 Forms from Defendant BOSS or a BOSS subcontractor within 30 days. Defendants withdrew their requests for bank and brokerage records. However, the Magistrate Judge denied Defendant's request for additional documents, implicitly including Plaintiffs' tax return information. As to Document Request 20, the Magistrate Judge denied Defendant's motion in its entirety.

Defendant seeks review of the Magistrate Judge's order denying its Motion to Compel as to Document Requests 18 and 20. Specifically, Defendant asks this Court to vacate or modify the February 26, 2002 order so that Plaintiffs are required to produce their income tax returns and documents

establishing their right to work in the United States. (Def.'s Notice of Mot. at 1).

## DISCUSSION

### I. STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) allows a district judge to designate a magistrate judge to hear certain pretrial matters. The district judge may reconsider any such pretrial matter "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Central District Magistrate Rule 3.3.1 also governs the Court's review of the magistrate's order. Rule 3.3.1 provides:

Within ten (10) days of service upon him of a written ruling, or order on a pretrial matter not dispositive of a claim or defense, any party aggrieved by a Magistrate Judge's decision may file (original and two copies) and serve a motion for review and reconsideration before the District Judge to whom the case is assigned, specifically designating the portions of the decision objected to and specifying wherein such portions of the decision are clearly erroneous or contrary to law, with points and authorities in support thereof.

Central District Magistrate Rule 3.3.1. "Discovery rulings by a Magistrate Judge are reviewed by this court under the implicit standard of abuse of discretion." *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the High Court of Justice, Chancery Division, England,* 147 F.R.D. 223, 225 (C.D.Cal.1993) (citing *Geophysical Systems Corp. v. Raytheon Co.,* 117 F.R.D. 646, (C.D.Cal.1987)). "[I]n deciding whether an abuse of discretion has occurred, this court will only consider the evidence that was presented to the Magistrate Judge." *Id.* at 226. The district court assigned to the case "shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." FED. R. CIV. P. 72(a).

### II. THE MAGISTRATE JUDGE'S REFUSAL TO COMPEL THE PRODUCTION OF PLAINTIFFS' TAX RETURNS WAS NOT CLEARLY ERRONEOUS.

**\*3** As stated *supra,* the Magistrate Judge ordered the named Plaintiffs to produce all W–2 and 1099 Forms from Defendant BOSS or its Subcontractors. (February 26, 2002 Order at 2:24 —3:1). However, the Magistrate Judge refused to compel the production of Plaintiffs' tax returns. (Id. at 3:1–2). In so doing, the Magistrate Judge found that there was little relevant information in the tax returns and that there was an *in terrorem* effect to ordering their production. (Cephas Decl., Ex. A at 18).[1] In addition, the Magistrate Judge stated that there was a better way to obtain the information Defendant sought, although he did not articulate this alternative method. (*Id.*).[2] The Magistrate Judge indicated that his decision was without prejudice to Defendants making a greater showing of the need for the tax returns at a later stage of the litigation. (Id. at 20).[3]

Defendant contends the Magistrate Judge's failure to compel the production of Plaintiffs' tax returns was clearly erroneous and contrary to law. Specifically, Defendant argues Plaintiffs should be compelled to produce their tax returns and related records for the following reasons: (1) Plaintiffs have put their income and method of payment at issue; (2) Plaintiffs have not met the necessary burden to require Defendant to obtain the information from the Subcontractors or another source; and (3) requiring the defendant to obtain such information from the Subcontractors would be unduly burdensome and apparently futile. (Mot. at 7–13). In opposition, Plaintiffs do not dispute that the tax returns have some relevance to this suit. (Opp'n. at 8:15). However, Plaintiffs contend that most of the information sought by Defendant is available in the W–2 and 1099 Forms and that compelling the production of Plaintiffs' tax returns will unduly infringe on the privacy rights of the plaintiffs. (Opp'n. at 8).

There is no question that Plaintiffs' tax returns have at least some relevance to this action because the plaintiffs have placed their income in question. (FAC ¶ 2); *Shaver v. Yacht Outward Bound,* 71 F.R.D. 561, 563 (N.D.Ill.1975) ("As a general rule, federal income tax returns are subject to discovery in civil suits where a litigant tenders an issue as to the amount of his income."). However, the Magistrate Judge's refusal to compel production is nonetheless proper if Plaintiffs met the burden of proving there was no compelling need for the tax returns because the information sought could be obtained from other sources. *Fort Washington Resources, Inc. v. Tannen,* 153 F.R.D. 78, 80 (E.D.Penn.1994). Here, the Magistrate Judge implicitly found Plaintiffs had met that burden. The Court does not find this ruling to be clearly erroneous.

The Magistrate Judge's February 26, 2002 order compelled Plaintiffs to produce their W–2 and 1099 Forms. These documents would, presumably, contain all necessary information regarding Plaintiffs' income from BOSS or its Subcontractors. Perhaps acknowledging this fact, Defendant argues the tax returns are nonetheless necessary because many plaintiffs have indicated they did not receive W–2 Forms and, even if such forms are produced, those forms would not reveal whether the plaintiffs were paid, as they allege, as independent contractors. (Reply at 5, 6).[4] At this stage of the litigation, the Court finds both arguments insufficient to warrant reversal of the Magistrate Judge's ruling.

**\*4** In support of its claim that many plaintiffs lack W–2 Forms, Defendant points to the declarations of two named plaintiffs, who indicate that sometimes they were not given a statement of their hours and wages. (Cephas Reply Decl., Ex. B, ¶ 2, Ex. C, ¶ 2). Even if, as Defendant argues, those individuals were not given W–2 or 1099 Forms, it would have been entirely speculative for the Magistrate Judge to assume that every named plaintiff or class member also lacks such information. Rather, given the record before the Magistrate Judge, he had no reason to believe the information regarding Plaintiffs' incomes would not be made available by his order compelling the production of Plaintiffs' W–2 and 1099 Forms. In fact, to accommodate Defendant's concern, the Magistrate Judge made his ruling without prejudice to Defendant making a greater showing of the need for Plaintiffs' tax returns at a later juncture. (Cephas Decl., Ex. A at 20). Given the record before the Magistrate Judge, the Court is unable to find this choice was "clearly erroneous."

As to Defendant's second argument—that only tax returns will indicate whether Plaintiffs were paid as "independent contractors"—the Court also finds this insufficient to warrant reversal. Defendants argue Plaintiffs' tax returns are necessary because a 1099 Form will reveal only the amount each plaintiff was paid, whereas a tax return for an independent contractor ordinarily will contain a Schedule C ("Profit or Loss From Business") revealing whether the taxpayer operated as a second level subcontractor who hired individuals to work in Defendant's stores. (Reply at 6). Even assuming Plaintiffs' tax returns would contain such information, the notion that Plaintiffs operated as second level subcontractors is far fetched. Plaintiffs do allege they were treated as "independent contractors." (FAC ¶ 2). However, that allegation is coupled with allegations and (on this motion)

declarations tending to demonstrate that in fact Plaintiffs were treated as "employees." [5] Moreover, as Plaintiffs argue, even assuming some Plaintiffs may have functioned as second level subcontractors who hired others to work in Defendants' stores, Defendant could easily obtain this information by propounding interrogatories to the named plaintiffs on this issue. As such, Plaintiffs' tax returns are not relevant for this purpose and Defendant's argument is rejected.

For the foregoing reasons, the Court is unable to find that the Magistrate Judge's refusal to compel the production of Plaintiffs' tax returns was "clearly erroneous." The Magistrate Judge was well within his discretion in deciding that the relevant information sought from Plaintiffs' tax returns could be obtained from Plaintiffs' W–2 and 1099 Forms or from the Subcontractors. If that ultimately proves to be incorrect, Defendant may file another Motion to Compel with the Magistrate Judge.

### III. PLAINTIFFS' IMMIGRATION DOCUMENTS ARE NOT RELEVANT TO THIS ACTION AND THEIR COMPELLED PRODUCTION COULD CAUSE A MISCARRIAGE OF JUSTICE.

*5 As stated *supra,* the Magistrate Judge denied Defendant's Motion to Compel Production of Documents related to the immigration status of the plaintiffs. [6] In so doing, the Magistrate Judge found that there was an *in terrorem* effect to the production of such documents and that the immigration status of Plaintiffs was not relevant to any claim or defense. (Cephas Decl., Ex. A at 21, 29). The Magistrate Judge specifically rejected Defendant's contention that this information could somehow mitigate Albertson's liability. (Cephas Decl., Ex. A at 21). [7] In addition, the Magistrate Judge noted that Defendant could obtain such information from the subcontractors who directly employed the plaintiffs through the contractual obligations those subcontractors owe to BOSS. (Cephas Decl., Ex. A at 27, 34).

Federal courts are clear that the protections of the FLSA are available to citizens and undocumented workers alike. *Patel v. Quality Inn South,* 846 F.2d 700, 706 (11th Cir.1988); *Contreras v. Corinthian Insur. Brokerage,* 25 F.Supp.2d b1053, 1056 (N.D.Cal.1998). [8] Nonetheless, Defendant argues that documents related to Plaintiffs' immigration status are relevant to this action because such information may limit Defendant's liability for back pay. (Mot. at 13; Reply at 8). In support of this assertion, Defendant relies on *Hoffman Plastic*

*Compounds, Inc. v. National Labor Relations Board,* 2002 WL 459438 (U.S.S.Ct.) and *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 362–63, 115 S. Ct 879, 886–87 (1995).

In *Hoffman,* the Supreme Court addressed an award of back pay to an undocumented worker who had been unlawfully terminated due to his participation in a union-organizing campaign. *Id.* at *3. The Court held that an award of back pay to an illegal alien for years of work "not performed" ran counter to the policies underlying the Immigration Reform and Control Act (IRCA) of 1986. *Id.* at *8. As such, the Court held, the award was not permissible. *Id.* at *9.

*Hoffman* does not support Defendant's argument that Plaintiffs' immigration status is relevant to this action. Here, unlike in *Hoffman,* the class members have not been terminated and do not seek back pay for work "not performed." Rather, Plaintiffs continue to be employed as janitors in stores operated by the defendant and merely seek to recover the unpaid wages (minimum wages and overtime premiums) to which they are entitled under the FLSA. *Hoffman* did not hold that an undocumented employee was barred from recovering unpaid wages for work actually performed. In fact, as the majority opinion makes clear, the Court was concerned with the inability of the undocumented worker to mitigate damages after his termination, a duty required under federal law. *Id.* at *8. Here, Plaintiffs are under no duty to mitigate damages because they have not been terminated. [9] Thus, *Hoffman* does not establish that an award of unpaid wages to undocumented workers for work actually performed runs counter to IRCA. As such, the case does not support Defendant's argument that Plaintiffs' immigration status is relevant to its defense in this case. [10]

*6 For analogous reasons, *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 362–63, 115 S. Ct 879, 886–87 (1995), does not establish that Plaintiffs' immigration status is relevant to this action. In *McKennon,* the Supreme Court held that after-acquired evidence of wrongdoing by a wrongfully terminated employee could limit the amount of back pay awarded the employee-plaintiff. *McKennon,* 513 U.S. at 362–63. As with *Hoffman,* the Supreme Court in *McKennon* addressed an award of back pay to a plaintiff who had been wrongfully terminated by his or her employer. The case does not hold that an employee who seeks to recover unpaid wages for work actually and previously performed cannot do so. As such, it also does not establish that Plaintiffs' immigration status is relevant to this action.

Flores v. Albertsons, Inc., Not Reported in F.Supp.2d (2002)

Moreover, as the Magistrate Judge found, there is an *in terrorem* effect to the production of such documents. It is entirely likely that any undocumented class member forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face termination and/or potential deportation. In fact, this fear is entirely reasonable given Defendant's acknowledgment that it seeks this information so that it can preclude undocumented members of the class from performing janitorial services in its stores. (Mot. at 14:11–14). Federal courts have held that where, as here, the disclosure of the requested information may cause injury to a party, the party seeking discovery must demonstrate that its need for the information outweighs the injuries that may be caused by disclosure. *Flynn v. Goldman, Sachs & Co.,* 1993 WL 362380 (S.D.N.Y.). Thus, even assuming Plaintiffs' immigration status is somewhat relevant to Defendant's damages (an assumption belied by the case law), Defendant

must still establish that its need for the information outweighs the injuries that may be caused by disclosure. Given the significance of the potential harm, Defendant has failed to meet this burden.

For the foregoing reasons, the Court cannot say that the Magistrate Judge's ruling as to Plaintiffs' immigration documents was clearly erroneous or contrary to law. As such, Defendant's motion is denied.

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court DENIES Defendant's Motion for Review and Reconsideration. [11]

IT IS SO ORDERED.

Footnotes

1    Although the Magistrate Judge's February 26, 2002 Order does not articulate the reasoning for his decision, the Magistrate Judge did reveal the bases for his ruling during the February 4, 2002 telephonic hearing on Defendant's Motion to Compel.

2    Defendant argues at length that the alternate method of discovery referenced by the Magistrate Judge would require Defendant to obtain the information regarding Plaintiffs' income from the Subcontractors. (Mot. at 11–13). However, there is no indication in the transcript that the Magistrate Judge was referring to this method.

3    Although not entirely clear from the record, the Magistrate Judge apparently decided that all relevant information sought by the defendant could be found in the W–2 or 1099 Forms. In response, Defendant argued this was not sufficient because many plaintiffs stated that they did not receive W–2 Forms. (Cephas Decl., Ex. A at 19: 4–17). Thus, the Magistrate Judge evidently made his ruling without prejudice so as to be able to revisit the issue upon a greater showing that the W–2 Forms had not been produced.

4    Defendant also argues the tax returns would establish whether Plaintiffs worked for one of BOSS's Subcontractors. (Mot. at 10). However, such information would already be present in Plaintiffs' W–2 Forms and thus the tax returns add nothing in this respect.

5    In fact, the FAC clearly alleges that each of the named plaintiffs "worked" as janitors at Defendants' stores. (FAC ¶¶ 2:20, 26, 27, 28, 29, 30, 31, 32, 33).

6    Document Request 20 expressly sought only the immigration documents of Plaintiff Flores. However, as the transcript of the February 4, 2002 hearing makes clear, the Magistrate Judge denied Defendant's Motion to Compel such documents as to all class members. (Cephas Decl., Ex. A at 21).

7    The parties and the Magistrate Judge used "mitigate damages" to refer to what this Court believes should be termed "reduce the amount of damages it might have to pay."

8    Plaintiffs have acknowledged that many class members may be undocumented workers. (Jt. Stip. at 24:24–27).

9    The Magistrate Judge recognized this fact during the telephonic hearing. Cephas Decl., Ex. A at 29:14–18).

10    In *Del Rey Tortilleria, Inc. v. NLRB,* 976 F.2d 1115 (7th Cir.1992), the Seventh Circuit drew a similar distinction between back pay for labor "not performed" and unpaid wages for work "actually performed." In *Del Rey Tortilleria,* the Seventh Circuit anticipated *Hoffman* in holding that undocumented workers could not receive back pay for wages they would have earned had they not been terminated. *Id.* at 1121. However, in so doing, the Seventh Circuit expressly distinguished *Patel v. Quality Inn South,* 846 F.2d 700 (11th Cir.1988), *supra,* on the basis that *Patel* involved a suit by undocumented workers for work "already performed. *Del Rey Tortilleria,* 976 F.2d at 1122 fn. 7.

11    Docket No. 101.

Flores v. Albertsons, Inc., Not Reported in F.Supp.2d (2002)

**End of Document**
© 2014 Thomson Reuters. No claim to original U.S. Government Works.

Rafeedie v. L.L.C., Inc., Not Reported in F.Supp.2d (2011)

2011 WL 5352826
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas,
Austin Division.

Monica **RAFEEDIE** on Behalf of Herself
and Others Similarly Situated, Plaintiff,
v.
L.L.C., INC. d/b/a Perfect 10 Men's
Club and W.F.K.R, Inc. d/b/a Sugar's
Uptown Cabaret, Defendants.

No. A--10--CA--743 LY.   |   Nov. 7, 2011.

**Attorneys and Law Firms**

Robert R. Debes, Jr., Debes Law Firm, Houston, TX, for
Plaintiff.

Bradley J. Shafer, Matthew J. Hoffer, Shafer & Associates,
P.C., Lansing, MI, Brian Walter Bishop, Law Office of Brian
W. Bishop, Austin, TX, for Defendants.

**Opinion**

***ORDER***

ANDREW W. AUSTIN, United States Magistrate Judge.

**\*1** Before the Court are Defendants' Motion to Compel
Production of Tax Returns and Financial Information and
Appendix, filed August 10, 2011 (Clerk's Dkt. # 's 111–12);
Plaintiffs' Response to Defendants' Motion to Compel, filed
August 30, 2011 (Clerk's Dkt. # 124); Reply in Support of
Defendants' Motion to Compel Production of Tax Returns
and Financial Information, filed September 14, 2011 (Clerk's
Dkt. # 131); Plaintiffs' Motion for Protective Order, filed
September 23, 2011 (Clerk's Dkt. # 141); Plaintiffs' Surreply
to Defendants' Motion to Compel, filed September 26, 2011
(Clerk's Dkt. # 142); Plaintiffs' Motion to Compel Discovery
and/or to Strike Witnesses, filed October 4, 2011 (Clerk's Dkt.
# 149); Defendants' Surreply in Support of Motion to Compel,
filed October 7, 2011 (Clerk's Dkt. # 157); Defendants'
Response to Plaintiffs' Motion for Protective Order, filed
October 12, 2011 (Clerk's Dkt. # 164); Defendants' Response
to Plaintiffs' Motion to Compel Discovery and/or to Strike
Witnesses, filed October 20, 2011 (Clerk's Dkt. # 170); Joint
Advisory to the Court Re: Defendants' Motion to Compel

Production of Tax Returns and Financial Information (Doc.
111); Plaintiffs' Motion for Protective Order (Doc. 141); and
Plaintiffs' Motion to Compel Discovery And/or to Strike
Witnesses (Doc. 149), filed October 25, 2011 (Clerk's Dkt.
# 172).; and Plaintiffs' Supplemental Memorandum, filed
October 28, 2011 (Clerk's Dkt. # 174). The motions were
referred pursuant to 28 U.S.C. § 636(b)(1)(a), Federal Rule of
Civil Procedure 72, and Rule 1(c) of Appendix C to the Local
Rules of the United States District Court for the Western
District of Texas.

**I.**

Plaintiff Monica **Rafeedie** ("**Rafeedie**") brings this action
under the Fair Labor Standards Act ("FLSA"). **Rafeedie** is
an exotic dancer who alleges she was not paid any wages
by Defendants, but worked simply for tips. She brings this
action on behalf of herself and others similarly situated. The
Court conditionally certified this case as a collective action on
May 9, 2011. In relevant part, Defendants contend **Rafeedie**
and the other dancers worked as independent contractors, and
thus the relationship between Defendants and the dancers
is not subject to the FLSA. Plaintiffs, in turn, contend
they were misclassified as independent contractors and their
employment should have been governed by the FLSA.

Over the course of the last six months, the parties have
engaged in a variety of discovery. Among other things,
Defendants have issued interrogatories and requests for
production of documents to members of the collective action
seeking a variety of financial information from the dancers..
Plaintiffs object to the requests as overly broad, burdensome,
invasive and intrusive, and only marginally relevant to any
issue in the lawsuit and have filed a motion for protection
from those requests. Plaintiffs have also moved to compel
production of Defendants' tax returns and/or to strike several
witnesses. Defendants object to the production request as
overbroad, seeking irrelevant information and satisfied by
other production. The parties have filed responsive pleadings
and a joint advisory concerning their attempts to resolve
the matters without court intervention. The undersigned
conducted a hearing on the motions on October 26, 2011. This
matters are now ripe for determination.

**II.**

Rafeedie v. L.L.C., Inc., Not Reported in F.Supp.2d (2011)

---

### A. Defendants' Motion to Compel and Plaintiffs' Motion for Protective Order

**\*2** Defendants have requested discovery from Plaintiffs covering a wide array of financial information, from bank statements to loan applications, and from credit card account statements to income tax returns. They contend the information is relevant to determining whether Plaintiffs are independent contractors under the economic realities test. Plaintiffs argue the requests are intrusive and invasive. They also maintain the information they have agreed to provide Defendants in other forms should be sufficient to satisfy their discovery obligation.

"To determine if a worker qualifies as an employee [under the FLSA], we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 343 (5th Cir.2008). The Fifth Circuit has identified five relevant non-exhaustive factors to making this determination: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Hopkins,* 545 F.3 d at 343.

The Court will focus first on Defendants' request for the Plaintiffs' income tax returns. Tax returns are neither privileged nor undiscoverable. *F.D.I. C. v. LeGrand,* 43 F.3d 163, 172 (5th Cir.1995). The Fifth Circuit has suggested the party seeking to discover tax returns must show the relevance of the tax returns, and then the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained. *Id.* Defendants argue the tax returns are relevant to the determination of whether Plaintiffs were independent contractors or employees under the FLSA, as well as the amount of damages at issue. They contend the returns would show sources of income, whether Plaintiffs considered themselves self-employed and the amount of business deductions taken. Plaintiffs argue the relevant information can be obtained by way of interrogatories asking about their sources of income and their stipulation that they considered themselves self-employed for income tax purposes.

The undersigned agrees with Defendants that the information on Plaintiff's income tax returns is relevant. Significantly, the Fifth Circuit has looked to the income and deductions in a plaintiff's tax returns in examining whether a plaintiff was an employee or independent contractor under the FLSA. *Carrell v. Sunland Const., Inc.,* 998 F.2d 330, 333 (5th Cir.1993). The undersigned disagrees with Plaintiffs that the proffered other sources of information would provide the same information. As Plaintiffs have not agreed to produce information revealing their business expenses, determination by Defendants of the relative investments of the parties and degree to which profit and loss of the dancer would be difficult, if not impossible Privacy concerns of the Plaintiffs concerning the information in their tax returns may be addressed by appropriately designating materials for limited disclosure pursuant to the Protective Order entered by Judge Yeakel on July 13, 2011. The undersigned thus concludes discovery of Plaintiffs' income tax returns, including supporting schedules and attachments should be permitted. [1]

**\*3** The undersigned reaches a different conclusion as to the other financial information sought by Defendants. The information sought by Defendants is wide-ranging. The requests are clearly aimed at discovering all possible information revealing Plaintiffs' sources of income, and claimed sources of income. During the hearing, counsel for Defendants maintained the wide range of requests was necessary to corroborate (or impeach) whatever information Plaintiffs reported in their tax returns. As Plaintiffs point out, Defendants did not cite a single case in which information concerning the general financial status of plaintiffs in an FLSA case was ruled discoverable. In fact, in one of the cases cited by Defendants, although the court granted discovery of the plaintiff's tax return, the court specifically denied the defendant's request for a loan application for plaintiff's purchase of real property. *Canada v. Hotel Development.-Texas, Ltd.,* 2008 WL 3171940, at \*2 (N.D.Tex. July 30, 2008).. Plaintiffs maintain the requests are unduly burdensome, invasive and intrusive. They further suggest the broad scope of the requests was intended to have a chilling effect on participation in this collective action.

The undersigned agrees. Defendants's position is predicated on their assumption that information on an income tax return is untrustworthy. A federal income tax return is filed under penalty of perjury and filing a false return may additionally subject the filer to criminal penalties under Title 26 of the United States Code. Defendants' assumption thus rests on a very unstable foundation. The undersigned also agrees the information requested is invasive

---

and intrusive, subjecting Plaintiffs to a very substantial burden.[2] Moreover, the insistence by Defendants that all the sources of income of each Plaintiff are relevant is overly broad. The relevance of income from other jobs, and especially unearned sources of income, bears no relevance to determining whether Defendants are liable to Plaintiffs under the FLSA.[3] Accordingly, the undersigned grants Defendants' motion to compel solely as to the requests for tax returns and supporting schedules and attachments and grants Plaintiffs' motion for protective order as to the other challenged discovery requests.

### B. Plaintiffs' Motion to Compel

Plaintiffs, in turn, have moved to compel discovery and/or strike witnesses. As set forth in the joint advisory of the parties, and as stated in the hearing, two of the three issues raised in the motion have been resolved. Defendants have agreed to produce Mr. Cox and Ms. Thompson for deposition and have identified the "Jane Doe" witnesses as requested by Plaintiffs. As suggested at the hearing, counsel for Plaintiffs should consult with counsel for Defendants concerning contact of the "Jane Doe" witnesses. The undersigned was not asked to, and did not make any ruling as to, whether contact of those witnesses must take place in the presence of counsel for Defendants.

*4 The only remaining issue is Plaintiffs' discovery requests seeking Defendants' federal tax returns, documents reflecting their sources of income, and W2s/ 1099s sent by Defendants to the IRS. Plaintiffs contend the information sought is relevant to several issues. First, they contend the information is necessary to determine the tax treatment of the "dance fees" paid by club patrons, which in turn is relevant to the issue of classification of the Plaintiffs under the FLSA and Defendants' claims that those fees should offset their wage obligations. Plaintiffs also maintain the information is relevant to determining whether they were independent contractors, specifically to the inquiry concerning the relative investments of Plaintiffs and Defendants.

Defendants suggest the information sought by Plaintiffs is not relevant. They maintain the information regarding all of their sources of income goes well beyond the issue of whether Plaintiffs were misclassified as independent contractors under the FLSA.[4] Defendants also contend they have provided or offered to provide documents other than their tax returns which would show the tax treatment and amount of dance fees. The undersigned notes Defendants' objections to Plaintiffs' discovery requests mirror Plaintiffs' objections to Defendants' requests. Defendants' objection to Plaintiffs' request for tax returns and W2s/1099s fails for the same reasons Plaintiffs' objection fails. As set forth above, tax returns are discoverable. And the information revealed would likely be relevant to the relative investment of the parties and thus the issue of misclassification.

Further, Defendants' contention that they have provided other documents from which the relevant information concerning the dance fees may be gleaned fails. A review of the proffered documentation at the hearing clearly revealed the documentation fell well short of evidencing the amount of dance fees and their accounting and tax treatment.[5] Moreover, simply providing Plaintiffs with general revenue figures, as likely reported on Defendants' tax return, will neither permit Plaintiffs enough detail to determine the amount of dance fees nor the investment by Defendants relative to the amount of revenue generated by the work of Plaintiffs. Plaintiffs' motion to compel is, therefore, granted as to this ground.

### III.

Accordingly, the Court ORDERS that Defendants' Motion to Compel Production of Tax Returns and Financial Information (Clerk's Dkt. # 111), Plaintiffs' Motion for Protective Order (Clerk's Dkt. # 141) and Plaintiffs' Motion to Compel Discovery and/or to Strike Witnesses (Clerk's Dkt. # 149) are **GRANTED IN PART** as set forth above.

Footnotes

1    In reaching this conclusion, the undersigned makes no determination as to the admissibility of the tax return information at trial. Nor is any determination to be inferred as to the proper use by Defendants of any errors or other possible improprieties in the returns or the lack of any return. All such evidentiary issues are left to the trial judge.

2    The categories of requests include identification of all bank and credit card accounts, as well as all statements for those accounts, listing of all claims for governmental assistance, applications for a variety of financial instruments, all documents related to unemployment or worker's compensation benefits, all job applications; and a signed release to obtain a credit report. As noted at the hearing, Defendants'

Rafeedie v. L.L.C., Inc., Not Reported in F.Supp.2d (2011)

request for such intrusive financial information appears to have been motivated to chill the putative class members' desire to opt into the case, or to remain in the case after opting in.

3      Further, Defendants provided no justification for their request for all job applications and credit reports. Neither would reveal sources of income or business deductions taken by Plaintiffs. This request suggests Plaintiffs' contention that Defendants' discovery requests were intended to have a chilling effect is well founded.

4      The irony of this position was not lost on the undersigned, particularly given the sheer breadth of the Defendants' requests served on Plaintiffs.

5      Counsel for Defendants suggested at the hearing that other documents might exist which would be satisfactory. However, without examining such documents, or permitting counsel for Plaintiffs to examine the documents, the undersigned cannot opine as to whether the documents would clearly evidence both the amounts of fees and their accounting and tax treatment by Defendants.

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.